**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
LLOYD BAILEY,

                          Plaintiff,                              **MEMORANDUM**
                                                                             **AND ORDER**
          -against-

BROOKDALE UNIVERSITY HOSPITAL                           CV 16-2195 (ADS) (AKT)
MEDICAL CENTER and CARLOS ORTIZ,

                              Defendants.
-------------------------------------------------------------X
**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**       **BACKGROUND**

On May 3, 2016, Plaintiff Lloyd Bailey ("Plaintiff" or "Bailey") commenced the instant action against Brookdale University Medical Center ("Brookdale") and Carlos Ortiz ("Ortiz") (collectively, the "Defendants") seeking damages based upon Defendants' violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1983, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290 *et seq*. and the New York City Human Rights Law ("NYCHRL"). *See generally* Complaint ("Compl.") [DE 1].

The Court conducted an Initial Conference with the parties in accordance with Rule 26(f) of the Federal Rules of Civil Procedure on August 18, 2016. DE 20. Specifically, the Court pointed out that

> [t]he parties have met and conferred and have defined the parameters of the electronically stored information ("ESI") which may be relevant in this case. I am now directing counsel to have a further meet-and-confer to reach an agreement on the method by which electronically stored information ("ESI") shall be *produced* in this case. The Court expects that discussion to include issues such as the custodians who should be included, what search terms are to be utilized if necessary, etc. Under Rule 26, the

> requesting party has the right to demand the manner in which the production takes place. For example, if the requesting party wishes to have the materials produced in the traditional manner in hardcopy, that is fine. If the requesting party wants the material produced on a disc in some type of searchable software format (e.g., .tiff, .pst, .pdf, native format, etc.), that is fine as well. However the parties are directed to reduce their agreement to a writing, with specific details as to the manner of production for all parties. Counsel are to file their letter agreement, executed by all counsel, on ECF no later than September 30, 2016 advising me of what agreement/ procedure has been put in place, and the specific details of such agreement.

*Id.* ¶ 6. Thereafter, on September 30, 2016, the parties submitted a fully executed ESI Agreement for the Court's review. DE 23. The Court "so ordered" the parties' ESI Agreement on October 4, 2016. DE 25.

On January 13, 2017, the parties took part in the Court's required Discovery Status Conference. DE 31. During that conference, an issue arose concerning the parties' ESI Agreement. *See id.* Specifically, the Court stated that

> [n]otwithstanding the fact that the parties previously entered into an ESI agreement, which the Court "so ordered" on October 4, 2016, plaintiff's counsel now seeks to "undo" various provisions of that agreement. Attorney Gabor argued that it would be "unduly burdensome and costly for the sole plaintiff ... To produce the ESI in the manner as set forth in the Order." DE 28.
>
> The Court pointed out that the ESI agreement had been freely negotiated over a more than reasonable time frame given by the Court. Those provisions, negotiated by Attorney Tand, who was also in the courtroom, had not changed in any way. Mr. Tand had ample opportunity to discuss and negotiate those terms with opposing counsel before freely signing the agreement and submitting it to the Court. A case of buyer's remorse on the part of the plaintiff at this juncture is unpersuasive.
>
> However, the Court directed plaintiff's counsel to review the parameters of the ESI agreement with an outside vendor and obtain a written estimate of the cost involved in making the production. Likewise, if plaintiff is claiming this is an economic hardship, then he must provide an affidavit detailing the reasons for asserting a

> claim of economic hardship. Defendants' counsel offered to contact their ESI vendor which might provide Plaintiff with the benefit of the same discounted rate that Defendants have arranged with this vendor. The Court recommended that the parties speak further about this prospect, noting that it is entirely up to Plaintiff's attorneys whether they wish to pursue this gesture. In any event, Plaintiff is to directed to provide the estimate and/or the affidavit to the Court within ten (10) days.

*Id.* ¶ 1.

In accordance with the Court's Order, on January 20, 2017, Plaintiff submitted an Affidavit of Economic Hardship ("Bailey Aff.") [DE 33]. The Affidavit states, in relevant part, that: (1) "ESI discovery will cost approximately $2,000.00 to $3,000.00;" and (2) the expense would cause Plaintiff to experience "severe financial hardship" since he is "the only working member of [his] family." Plaintiff added that although he earns "roughly $90,000 per year," he has expenses (including child support, daycare, mortgage payment and transportation expenses) which leave him "with approximately $1650 per month to provide for my wife and three children." Bailey Aff. ¶ 3.

On January 26, 2017, Defendants filed opposition to the relief sought in the Bailey Affidavit. DE 34. Specifically, Defendants assert that: (1) "[t]he law is clear, that the producing party (Plaintiff) should bear the cost of his ESI production" (citing cases); (2) the estimate of $2,000 to $3,000 that "Plaintiff received from [the] outside discovery vendor LDiscovery . . . is very reasonable;" (3) "Plaintiff is not 'economically disadvantaged'" since "his affidavit [states] that he is earning a salary of 'roughly $90,000" and therefore he "can pay this reasonable cost;" (4) "Plaintiff commenced the lawsuit [and therefore] he should produce the ESI that has been put in issue due to his own claims;" and (5) the cost should not be shifted to Defendants in light of the fact that "Brookdale [is a] non-profit hospital operating in a low income neighborhood [and it] has already had to bear its own costs here." *Id*.

3

In response, Plaintiff reiterates that his affidavit "clearly sets forth that for him to expend between $2,000.00 and $3,000.00 for the production of ESI discovery for his emails would most certainly pose an extreme hardship" since, although Plaintiff "earns approximately $90,000.00 per annum, [he] is the sole support for his family." DE 35. In addition, Plaintiff maintains that "it is highly offensive that Defendants refer to the cost of the ESI . . . as 'minimal' and 'very reasonable'" since such a position concerns "a subjective matter." *Id*.

## II. APPLICABLE LAW

Rule 34(a) of the Federal Rules of Civil Procedure delineates the type of items that a requesting party may "inspect, copy, test or sample" when such items are in the "responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a). The overall scope of Rule 34 is broad and includes "information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved and examined. At the same time, a Rule 34 request for production of 'documents' should be understood to encompass, and the response should include, electronically stored information. . . ." Fed. R. Civ. P. 34 (Advisory Committee Notes to 2006 Amendments). Rule 34(b)(2)(E) governs the manner in which production of documents or electronically stored information ("ESI") must be made. The Rule states as follows:

> **(E)** *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> **(i)** A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> **(ii)** If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

> **(iii)** A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E). By it terms, Rule 34(b)(2)(E)(i) and (ii), concerning the production of documents or ESI respectively, permits the producing party, unless otherwise ordered by the Court, to choose which method to produce the items sought by the requesting party. *See* Rule 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request.") (emphasis added); Rule 34(b)(2)(E)(ii) ("a party must produce [ESI] in a form or forms in which it is ordinarily maintained *or* in a reasonably usable form or forms") (emphasis added). Thus, "under the provisions of Rule 34(b)(2), a responding party clearly controls the manner in which production will occur, and specifically which of the two prescribed methods of production will be employed." *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008); *see Hill v. Stewart*, No. 10CV538S, 2011 WL 4439445, at *5 (W.D.N.Y. Sept. 23, 2011) ("[D]efendants are not obligated under the Federal Rules to organize their records to suit plaintiff's discovery demands and plaintiff cites no authority to the contrary. Rule 34(b)(2)(E) gives the responding party the option either to produce the documents in the manner they usually keep the records or produce them in the categories sought; that rule does not require the responding party to alter their record keeping to meet the movant's discovery categories.").

With regard to the cost of production, the general rule is that the responding party bears all such costs. *See Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 429 (S.D.N.Y. 2002) (recognizing the "well-established legal principle . . . that the responding party will pay the expenses of production"); *Novick v. AXA Network, LLC*, No. 07 CIV. 7767, 2013 WL 5338427, at *3 (S.D.N.Y. Sept. 24, 2013) ("The presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district

court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery.") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S. Ct. 2380, 2393, 57 L. Ed. 2d 253 (1978)); *Wood v. Capital One Servs., LLC*, No. 09-CV-1445, 2011 WL 2154279, at *4 (N.D.N.Y. Apr. 15, 2011) ("Ordinarily the presumption is that the party whose ESI is being sought during discovery must bear the expense of complying with the discovery request, just as is the case with regard to any other more traditional discovery."); *Quinby v. WestLB AG*, 245 F.R.D. 94, 101 (S.D.N.Y. 2006) (same); *Hallmark v. Cohen & Slamowitz, LLP*, No. 11-CV-842, 2016 WL 1128494, at *3 (W.D.N.Y. Mar. 23, 2016) ("[I]n federal civil discovery it is presumed that a responding party will bear the expense of production.").

Notwithstanding operation of the general rule, a court may, under limited circumstances, consider "cost-shifting" of such production expenses to the requesting party. *See Wood*, 2011 WL 2154279, at *4 (recognizing that "[i]n some cases, however, it is appropriate to shift all or some costs of producing discovery to the requesting party. . ."). However, such a deviation "should be considered *only* when electronic discovery imposes an 'undue burden or expense' on the responding party." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (emphasis in original); *see Quinby*, 245 F.R.D. at 101; *Novick*, 2013 WL 5338427, at *4; *Wood*, 2011 WL 2154279, at *4 (cost-shifting appropriate only where "compliance demands would impose undue burden or expense on a responding party"). Likewise, "whether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an *accessible or inaccessible* format (a distinction that corresponds closely to the expense of production)." *Zubulake*, 217 F.R.D. at 318 (emphasis in original); *see Novick*, 2013 WL

5338427, at *4. It follows that "[f]or data that is kept in an accessible format, the usual rules of discovery apply: the responding party should pay the costs of producing responsive data. A court should consider cost-shifting *only* when electronic data is relatively inaccessible, such as in backup tapes." *Zubulake*, 217 F.R.D. at 324 (emphasis in original); *Novick*, 2013 WL 5338427, at *4. Generally, "[d]ata that is 'accessible' is stored in a readily usable format that 'does need to be restored or otherwise manipulated to be usable.' Conversely, data that is 'inaccessible' is not readily useable and must be restored to an accessible state before the data is usable." *Quinby*, 245 F.R.D. at 102 (quoting *Zubulake*, 217 F.R.D. at 320). In the event a threshold determination is made that the electronic data sought is "relatively inaccessible," the court in *Zubulake* set forth the following factors which should be considered:

> 1. The extent to which the request is specifically tailored to discover relevant information;
> 2. The availability of such information from other sources;
> 3. The total cost of production, compared to the amount in controversy;
> 4. The total cost of production, compared to the resources available to each party;
> 5. The relative ability of each party to control costs and its incentive to do so;
> 6. The importance of the issues at stake in the litigation; and
> 7. The relative benefits to the parties of obtaining the information.

*Zubulake*, 217 F.R.D. at 322; *see Wood*, 2011 WL 2154279, at *4; *Quinby*, 245 F.R.D. at 102.

### III. DISCUSSION

Initially, the Court points out that the record does not contain any facts indicating that the ESI being sought is "inaccessible." Indeed, the Bailey Affidavit states only that the $2,000 to $3,000 estimated cost of ESI production — based upon the methods set forth in the parties' ESI Agreement — would "create a severe financial hardship" in light of the fact that Plaintiff is the "sole source of revenue for [his] family" and is responsible for all monthly expenses. *See generally* Bailey Aff. However, as stated above, whether ESI production is unduly burdensome or expensive so as to justify cost-shifting generally turns directly upon the accessibility or

inaccessibility of the data being sought. *See Zubulake*, 217 F.R.D. at 318; *Novick*, 2013 WL 5338427, at *4. Here, the Court has not been presented with any facts to conclude that the ESI being sought by Defendants is inaccessible. Thus, it necessarily follows that such production would not be so unduly burdensome or expensive to justify deviating from the general rule requiring the producing party to bear the expense of production. *See, e.g.*, *Novick*, 2013 WL 5338427, at *4 ("[T]he Court finds that cost-shifting does not apply in this circumstance; that is so because . . . cost-shifting does not apply where electronic data is kept in an accessible format, . . . and the defendants do not contend that the data they searched were kept in an inaccessible format. Thus, under the *Zubulake* standard, the defendants failed to show that cost-shifting is appropriate because they did not establish that the production at issue was unduly burdensome or expensive, that is, that the data were kept in an inaccessible format.") (internal citations omitted).

Notwithstanding the above, this is not the end of the inquiry in light of the specifics facts and circumstances of this case. Indeed, the scope and parameters of ESI "should be a party-driven process." *Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350, 358 (S.D.N.Y. 2008); *see Saliga v. Chemtura Corp.*, No. 3:12CV832, 2013 WL 6182227, at *1 (D. Conn. Nov. 25, 2013). Therefore, "[d]iscussions about ESI should begin early in the case. Rule 26(f) requires that the parties meet and confer to develop a discovery plan that discusses 'any issues about disclosure or discovery of [ESI], including the form or forms in which it should be produced.'" *Saliga*, 2013 WL 6182227, at *1 (quoting Fed. R. Civ. P. 26(f)(3)(C)). Such "[c]ooperation ... requires ... that counsel adequately prepare *prior* to conferring with opposing counsel to identify custodians and likely sources of relevant ESI, and the steps and costs required to access that information. It requires disclosure and dialogue on the parameters of preservation." *Trusz v. UBS Realty Inv'rs LLC*, No. 3:09-CV-

268, 2010 WL 3583064, at *4 (D. Conn. Sept. 7, 2010), *on reconsideration in part*, No. 3:09 CV 268, 2011 WL 121651 (D. Conn. Jan. 13, 2011), and *opinion vacated in part on reconsideration*, No. 3:09 CV 268, 2011 WL 124504 (D. Conn. Jan. 13, 2011). It follows that cooperative efforts "between counsel regarding the production of electronically stored information allows the parties to save money, maintain greater control over the dispersal of information, maintain goodwill with courts, and generally get to the litigation's merits at the earliest practicable time." *Saliga*, 2013 WL 6182227, at *1; *see Aguilar*, 255 F.R.D. at 358 ("[I]dentification of disputes over the forms of production may help avoid the expense and delay of searches or productions using inappropriate forms." Thus, at the outset of any litigation, the parties should discuss whether the production of metadata is appropriate and attempt to resolve the issue without court intervention."). To be sure, such cooperation in generating and reviewing ESI discovery parameters is therefore of paramount importance since it is the "parties, not [the] courts, [who must] [ ] make the tough choices [concerning the scope of ESI] that fit[s] the particular discovery needs of a case." *Aguilar*, 255 F.R.D. at 359.

Despite this guidance, it is clear that the above procedures were not adequately followed in this case. Although the parties did present a fully executed ESI Agreement to the Court, which the Court reviewed and ultimately "so ordered," the Agreement itself, although undoubtedly thorough, appears to have been drawn for use in corporate settings as opposed to the single plaintiff employment discrimination case at issue here. After engaging in a further review as to the scope and depth of the ESI Agreement, the Court can reach no other conclusion except that Plaintiff's counsel did not engage in meaningful discussions with his client regarding the terms of the proposed agreement and what costs might be incurred by producing the information in the format Defendants sought. Likewise, it further appears that Plaintiff's counsel did not

engage in a meaningful meet-and-confer session with opposing counsel concerning this Agreement nor did he thoroughly review the Agreement (or consider its ramifications) prior to signing it. Indeed, as is the case in many ESI disputes which come before the Court, the provisions concerning the overall scope and methods of Plaintiff's ESI production would likely have been the subject of zealous negotiation and compromise had Plaintiff's counsel undertaken a more substantive review. As it stands, Plaintiff's counsel has placed his client in the position of having to abide by an Agreement, which, in the current context, appears overly complex in light of the straightforward subject matter and claims involved here.

The Court points out that "[a] party who voluntarily chose [an] attorney as his representative in [an] action . . . cannot . . . avoid the consequences of the acts or omissions of this freely selected agent." *Hoodho v. Holder*, 558 F.3d 184, 192 (2d Cir. 2009) (internal quotations and citation omitted); *Gomez v. City of New York*, 805 F.3d 419, 424 (2d Cir. 2015) (same). However, this principle must be balanced against the Court's over-arching responsibility "to ensure a level playing field for both sides." *Cornell Univ. v. Hewlett–Packard Co.*, 2007 WL 4302778 (N.D.N.Y. July 23, 2007); *see Phelan v. Cambell*, No. 9:10–CV–540, 2012 WL 407161, at *2 (N.D.N.Y. Jan. 19, 2012), *report and recommendation adopted*, 2012 WL 407147 (N.D.N.Y. Feb. 8, 2012), *aff'd*, 507 Fed. App'x 14 (2d Cir. 2013). ("Discovery is not a matter of gamesmanship nor conducted like a game of chess."); *see also Fields-D'Arpino v. Rest. Associates, Inc.*, 39 F. Supp. 2d 412, 418 (S.D.N.Y. 1999) (employing "prophylactic measures ... to level the playing field in this action and ensure that plaintiff's claims will be fairly adjudicated."). Here, Defendants drafted and presented an ESI Agreement which is typically utilized in a more complex litigation involving multiple parties and corporate entities rather than a single plaintiff employment discrimination action. The manner and means of ESI production is

set forth in largely technical and precise terms — which clearly has an impact on the overall costs of the production of such information. In addition, there is no indication in the record that Defendants are amenable to considering an alternative format for the production which could prove less expensive. The Court understands that Defendants would like to have the materials presented in a manner which makes their search capabilities easier and perhaps more efficient. That is a rational goal. But the Defendants' aspirations are not the only issue the Court must consider.

The Court does not find that sufficient grounds exist to rescind the Agreement. However, to the extent the Defendants continue to insist on the production being made to the letter of the requirements/formatting they set forth in the Agreement, the Court finds that employing a measure of partial cost-shifting is appropriate here. *See Fields-D'Arpino*, 39 F. Supp. 2d at 418 (employing "prophylactic measures ... to level the playing field in this action and ensure that plaintiff's claims will be fairly adjudicated."). Specifically, the Court directs that 40% of the production costs for Plaintiff's ESI shall be borne by Defendants while 60% shall be assessed to Plaintiff. Given the circumstances set forth in this Memorandum, the Court finds that fairness dictates the Plaintiff's costs should be borne by Plaintiff's counsel rather than Plaintiff himself.

## IV. CONCLUSION

For the foregoing reasons, the costs of Plaintiff's ESI production will be allocated as follows: 40% to Defendants and 60% to Plaintiff. The production is to be completed forthwith. Plaintiff's counsel shall provide the Court with a letter from the vendor immediately (within five days of entry of this Order) stating the length of time the production will take. Once that information is obtained, the Court will set a further conference date with the parties.

**SO ORDERED.**

Dated: Central Islip, New York
       June 16, 2017

                                          /s/ A. Kathleen Tomlinson
                                          A. KATHLEEN TOMLINSON
                                          United States Magistrate Judge